37424. BAIRD *v.* TRAVELERS INSURANCE COMPANY *et al.*

DECIDED JANUARY 12, 1959—REHEARING DENIED
JANUARY 26, 1959.

884

*Kimzey & Crawford, Linton K. Crawford,* for plaintiff in error.
*Wheeler, Robinson & Thurmond,* contra.

QUILLIAN, Judge. 1. Counsel for Bolton Broiler Company and its insurance carrier insist that the claimant was an independent contractor and therefore did not come within the provisions of the Workmen's Compensation Act. With this contention we cannot agree. The claimant testified that T. G. Minish, an employee of Bolton Broiler Company, "was our head man, he was the one that told us what to do." The evidence also disclosed that the claimant worked where and when he was told. This, considered with the remainder of the evidence, was suffi-

cient to show that Bolton Broiler Company controlled the time, manner and method of executing the work, and the claimant was an employee, not an independent contractor. *Liberty Lumber Co. v. Silas,* 49 *Ga. App.* 262 (2) (175 S. E. 265).

The claimant was obviously not conducting a business or enterprise of his own, but through manual labor of the simplest kind performing a function necessary in carrying on his employer's business. In *Malcom v. Sudderth,* 98 *Ga. App.* 674, 688 (106 S. E. 2d 367), it was said: "According to the weight of authority one of the most significant guides in classing a piece worker and an employee or an independent contractor is found in the answer to the question: does he conduct his own independent business or merely work in carrying on that of his employer. In Maryland Casualty Co. *v.* Kent, (Tex. Civ. App.) 271 S.W. 929, 932, . . . it is said: 'A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.'" There are other sound criteria furnished by the *Malcom* case for the correct determination of the status of one who does piece work on behalf or in the service of another. Under several tests discussed in the case, and for which authoritative supporting cases are referred to, there is no question that the claimant in this case was not an independent contractor but occupied the relationship to the employer of master and servant.

2. Counsel for the employer contends that the injury occurred at a time when the claimant was on his own time and not performing any duties for his employer and therefore did not arise out of and in the course of his employment. The claimant testified that: he had returned from the farm where they had been catching chickens and he went to the cafe; after finishing in the cafe he returned to the plant to wait for the next trip to another farm; when they had more work to do they were sup-

posed to stay around; when he returned to the plant the crew was preparing to leave on another trip.

The above evidence was sufficient to support a finding that a portion of the claimant's duties was to return to the employer's plant and await orders to leave on another trip to catch chickens.

The employer's contention is without merit for the further reason that the evidence disclosed that the claimant was on his employer's premises for the purpose of being transported to another farm where he was to catch chickens. In *Travelers Ins. Co.* v. *Smith,* 91 *Ga. App.* 305, 309 (85 S. E. 2d 484) it is held: "Where, however—under the authority of the *Worley* [86 *Ga. App.* 794] and *Jackson.* [33 *Ga. App.* 35] cases . . . —one is on his employer's premises, and on his way to commence work, within a reasonable time prior to the time work begins, and he is injured, the injury results both in the course of and out of the employment."

3. The employer further contends that the claimant does not come within the provisions of the act because he was engaged in horseplay. The claimant testified that: he had engaged in horseplay with his fellow employees while they were at the farm catching chickens but he had not participated since they left the farm; it had taken approximately thirty or forty minutes to travel from the farm to the plant and the injury occurred fifteen or twenty minutes after their arrival at the plant; that at the time he was injured he was engaged in the performance of the duties of his employment and was taking no part in horseplay.

It is equally well established that an employee who is not participating in practical joking or horseplay but in discharging the duties of his employment at the time he is injured by the playful prank of a fellow employee, does sustain an accidental injury arising out of his employment within the meaning of the Workmen's Compensation Act. This view is taken both by this court (*American Mutual Liability Ins. Co.* v. *Benford,* 77 *Ga. App.* 93, 47 S. E. 2d 673), and by courts of other jurisdictions (Pacific Employers Insurance Company *v.* Industrial Accident Commission, 159 A.L.R. 313). The opinions in both of the cases referred to quote from Hartford Accident &c. Co. *v.* Cardillo,

72 App. (D.C.) 52, 112 F. 2d, 11, 14, "Nor is it necessary . . . that the particular act or event which is the immediate cause of the injury be itself part of any work done for the employer by the claimant or others. . . The statutory abolition of common-law defenses made easy recognition of the accidental character of negligent acts by the claimant and fellow servants. . . . But these extensions required a shift in the emphasis from the particular act and its tendency to forward the work to its part as a factor in the general working environment. The shift involved recognition that the environment includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional make-up. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. Work could not go on if men became automatons repressed in every natural expression. 'Old Man River' is a part of loading steamboats. These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment. . . So long as the claimant is merely the victim, not a participant, it makes little difference whether the fighting is by fellow employees or strangers to the work or what is the immediate occasion for the dispute. The same is true in horseplay. It is sufficient that the work brings the claimant within the range of peril by requiring his presence there when it strikes."

The text of 58 Am. Jur. 771, § 268 reads in part: "Some cases allowing compensation have been decided upon evidence that although the injured employee voluntarily engaged in horseplay, he had abandoned it at the time of receiving injury, thereby breaking the causal relationship between his previous conduct and that which caused his injury, which might otherwise have barred recovery of compensation."

The most frequently repeated rule in the administration of the compensation law is that the finding of the board on questions of fact are final and will not be disturbed if there is any competent evidence in the record to support the award. *Bussey* v. *Globe Indem. Co.*, 81 *Ga. App.* 401 (59 S. E. 2d 34); *Peninsular Life Ins. Co.* v. *Brand,* 57 *Ga. App.* 526 (196 S. E. 264); *American Mutual Liability Ins. Co.* v. *Sisson,* 198 *Ga.* 623 (32 S. E. 2d 295). 58 Am. Jur. 771, § 268 is also authority for the view that the fact that the employer has permitted the practice of practical joking and should anticipate that it may result in an employee being injured must be considered in determining whether risk of injury from practical joking or prank playing become a risk of the employment so that an injury resulting from the same arose out of the employment.

The very question of fact decided by the Workmen's Compensation Board in this case was whether the employee was performing the duties of his employment at the time he was injured. The question was one of fact and not of law because there was positive admissible proof and circumstances presenting this question as an issue of fact. Hence there was sufficient competent evidence in the record supporting the board's finding that the claimant sustained an accidental injury arising out of his employment.

The employer insists that because the practice of horseplay was general among the chicken catchers it became a patent of their employment. This insistence is unfavorable to the employer, for the reason that T. G. Minish who according to the claimant's testimony was boss of the chicken catchers, the employer's alter ego permitted and actually took part in the horseplay himself. There are numerous reported cases of which White v. Kansas City Stock Yards Co., 104 Kan. 90, 91 (177 P. 522) is typical which hold that: "While ordinarily a master is not liable under the Compensation Act for injuries to a workman which have been caused through the mischievous pranks and sportive jokes of his coemployees, yet the rule is otherwise where the master has knowingly permitted such mischievous pranks to continue. In such cases the danger of injury becomes an incident of the employment."

The employer insists that the claimant initiated the horseplay to which he fell victim. There is no evidence that before leaving the farm where chicken catching was in progress, the claimant played a prank on T. G. Minish that had gone unrequited and that the claimant more than an hour after he had ceased to take part in the horseplay and several miles distant from the place where he had last engaged in the same should have reasonably anticipated would call for retaliation. T. G. Minish was the claimant's foreman or boss and it was he who injured the claimant by shooting a piece of paper by means of a rubber band while the claimant was according to his testimony performing the duties of his employment. The testimony of the claimant was not, as a matter of law, overcome or refuted.

The issue was decided by the compensation board in the claimant's favor, and since it was an issue of fact made by conflicting evidence the finding of that body on each of the issues was as previously held in reference to other questions of fact involved in the case a final adjudication.

The judge erred in reversing the award of the Workmen's Compensation Board.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*