127 Ga. App. 268 (1972)
193 S.E.2d 244
LYONS
v.
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY et al.
47400.
Court of Appeals of Georgia.
Argued September 13, 1972.
Decided September 27, 1972.
Rehearing Denied October 11, 1972.
Ronald F. Adams, for appellant.
Bennet, Gilbert, Gilbert & Whittle, John M. Gayner, III, Fendig, Dickey, Fendig & Whelchel, J. Thomas Whelchel, for appellees.
EBERHARDT, Presiding Judge.
In this workmen's compensation case on appeal to the Superior Court of Wayne *269 County a judgment vacating and setting aside the award was entered by Judge Gordon Knox, Jr., as follows:
"Wesley Cunningham, Jr., the deceased son of claimant, Lucille C. Lyons, was killed on January 23, 1970. At the time of his death Wesley Cunningham, Jr. was an employee of H. C. Harper and Jessie Harper, a partnership (hereinafter called Harper), cutting pulpwood on lands owned by Brunswick Pulp & Paper Company (hereinafter called Brunswick) in Wayne County, Georgia.
"On November 18, 1970, the above styled claim was heard by E. Neal Little, deputy director, who entered an award in favor of claimant on June 30, 1971. From this award Brunswick, and its insurer, appealed to the full board on July 9, 1971, and on September 9, 1971, the State Board of Workmen's Compensation, with one member dissenting, [adopted] the award of the deputy director. From said award of the State Board of Workmen's compensation, Brunswick et al. filed its appeal to the Superior Court of Wayne County, Georgia, on the following grounds: (1) The facts found by the members do not support the award or decree; (2) There is not sufficient competent evidence in the record to warrant the members making the order or decree complained of; (3) The order is contrary to law; (4) The facts set forth in the evidence do not establish the deceased, Wesley Cunningham, Jr., was an employee of Brunswick.
"The material portion of the award of the hearing director[1] is as follows: `I find that at the time of Wesley Cunningham, Jr.'s death he was working for H. C. and Jessie Harper at an average weekly wage of $115 per week, and at which time he was cutting pulpwood on land owned by Brunswick Pulp & Paper Company. I find that H. C. and Jessie Harper had a contract to produce a certain amount of pulpwood for Brunswick Pulp & Paper Company per week, and that Brunswick Pulp & Paper *270 Company furnished the wood and designated the area [where] the wood was to be cut, and that H. C. and Jessie Harper cut and delivered the wood to Brunswick Pulp & Paper Company for so much per ton. I find that the contract itself controls not only H. C. and Jessie Harper, but also the employees of H. C. and Jessie Harper inasmuch as it designates specific areas to be cut and the kind of wood to be cut, and the time the wood is to be delivered to the pulpwood yard, and in addition to other requirements set forth in the written contract, it requires H. C. and Jessie Harper, that Brunswick Pulp & Paper Company actually controlled the employees of H. C. and Jessie Harper, and that the employees of H. C. and Jessie Harper are in fact employees of Brunswick Pulp & Paper Company, and that Wesley Cunningham, Jr. was an employee of Brunswick Pulp & Paper Company at the time of his accidental death. I therefore find, based on the above stipulations, and a careful consideration of all the evidence in this case, that Wesley Cunningham, Jr. did sustain an accidental injury that arose in and out of the course of his employment with Brunswick Pulp & Paper Company on January 23, 1970, and that said injury produced his death, and that at the time of his death, he was survived by one partial dependent, namely Mrs. Lucille C. Lyons, his mother.'
"The sole question to be decided on this appeal is the relationship between Brunswick and Harper. If that relationship was one of master and servant the award of the majority of the full board must be affirmed. On the other hand if such relationship was one of employer and independent contractor, said award must be reversed.
"In determining the relationship between Brunswick and Harper, several well established principles of law must be considered. `In claims for compensation under the *271 workmen's compensation act, where the question is whether the injured person, or the person under whom he was working, occupied the relation of an employee or of an independent contractor toward the alleged employer, the line of demarcation is often so close that each case must be determined upon its own particular facts. The chief test to be applied, however, in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conforming to the contract.' Liberty Lumber Co. v. Silas, 49 Ga. App. 262 (2) (125 SE 265). `According to the weight of authority, one of the most significant guides in classing a piece worker as an employee or an independent contractor is found in the question: Does he conduct his own independent business or merely work in carrying on that of his employer? A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.' Malcom v. Sudderth, 98 Ga. App. 674, 688 (106 SE2d 367). `Any doubt is to be resolved in favor of the existence of the employer-employee relationship rather than the employer-independent contractor relationship. This means simply that, while the claimant is at all times cast with the burden of proof, the evidence offered will, so far as it is genuinely susceptible of construction, be given that construction which is in his favor in determining whether he has carried that burden by a preponderance of the *272 evidence.' Travelers Insurance Co. v. Moates, 102 Ga. App. 778, 780 (117 SE2d 924). `The fact that an employer continuously checks the work of an independent contractor to see that the work is being done according to the specification of the job is thoroughly consistent with the relationship of employer and independent contractor and with the mere right of the employer to insist on a certain specific result.' Employers Mutual Liability Ins. Co. of Wausau v. Johnson, 104 Ga. App. 617, 619 (122 SE2d 308).
"Whether or not the contract between Brunswick and Harper created the relationship of employer-employee or employer-independent contractor is a question of law. This court construes the award to hold as a matter of law that said contract created the relationship of employer-employee between Brunswick and Harper.
"It is obvious that this contract was carefully prepared to create the relationship of employer-independent contractor between Brunswick and Harper. Basically, this contract provided that during the term thereof, 12 months, Harper would deliver to Brunswick approximately 316 tons of pulpwood weekly which was to be cut and processed from trees in Wayne County, Georgia, on lands owned by or leased by Brunswick, or, at Harper's option, from trees on land owned or leased by Harper, for a specified price per ton. From time to time during said term, Brunswick would designate in writing to Harper the quantity of pulpwood to be cut, the point of delivery and the delivery time schedule, and, with respect to lands owned or leased by Brunswick, the specific areas from which trees were to be cut. Such pulpwood would be cut, processed and delivered by Harper to Brunswick in accordance with described measurements and specifications. Certain conditions under which either Harper or Brunswick could suspend deliveries or terminate the contract were specified, and Harper could not transfer or assign the contract or subcontract any of the work to be done without the written consent of Brunswick.
*273 "There is no provision in this contract, with the exception of Paragraph 4 (c) hereinafter discussed, that would authorize this court to hold that the contract established the relationship of employer-employee between Brunswick and Harper. Wood v. Brunswick Pulp & Paper Co., 119 Ga. App. 880, 882 (169 SE2d 403); Harvey v. C. W. Matthews Contracting Co., 114 Ga. App. 866 (152 SE2d 809).
"Paragraph 4 (c) of the contract provides as follows: `Fires shall not be commenced or set out on the lands and if a forest fire breaks out on or threatens the lands of Brunswick or lands under its control within the area in which contractor is operating, he and his servants, agents and employees shall assist Brunswick in fighting such forest fire. In such event, if the fire does not stem from his operation, contractor shall be paid reasonable compensation for the services rendered by himself and his servants, agents and employees.'
"This provision does not `per se' require a holding that the contract created the relationship of employer-employee between Brunswick and Harper. To the extent that it required Harper to fight a fire started by their negligence, it is consistent with the duties assumed by Harper as an independent contractor. To the extent that it required Harper to fight fires not started by their negligence, it is possible that a situation could develop wherein Harper would be acting as an employee of Brunswick rather than an independent contractor. Be that as it may, it is undisputed that claimant's son, Wesley Cunningham, Jr., was killed while acting as an employee of Harper in cutting pulpwood, [and not while fighting fire].
"It is the judgment of this court that the contract between Brunswick and Harper created the relationship of employer-independent contractor, and that portion of the award holding to the contrary is based upon an erroneous construction of the law.
"This court further construes the award to hold that regardless *274 of the contract between Brunswick and Harper that the evidence produced at the hearing justified the deputy director in finding as a matter of fact that Wesley Cunningham, Jr., at the time of his death was an employee of Brunswick.
"If the evidence authorized a finding that Harper was in fact the alter ego of Brunswick, or that the contract with Harper was not made by Brunswick in good faith but for the purpose of avoiding liability under the workmen's compensation act, or that Brunswick actually controlled the time, manner, and method of executing the work performed by Harper, the finding of the deputy director that claimant's son was an employee of Brunswick must be affirmed. Wood v. Brunswick Pulp & Paper Co., supra.
"In a workmen's compensation case, the award of the board has the same effect as the verdict of a jury, and it must be upheld if there is `any evidence' to support it. The superior courts are bound by the findings of the Board of Workmen's Compensation if there is any competent evidence to support it. Adams v. U. S. Fidelity & Guaranty Co., 125 Ga. App. 232 (1) (186 SE2d 784). The evidence, briefly stated, introduced at the hearing shows:
`Brunswick owns approximately 75,000 acres of land in Wayne County, Georgia, upon which it grows trees to be used in the operation of its pulp mill in Brunswick, Georgia. Brunswick enters into written contracts with pulpwood producers to cut, load and haul the trees either to its mill or a rail wood-yard for a price per ton. In January, 1970, there were 8 to 10 such pulpwood producers producing wood for Brunswick in Wayne County. On October 20, 1969, Brunswick and Harper entered into a written contract wherein Harper was to produce approximately 316 tons of pulpwood weekly for Brunswick (Exhibit C-1). In accordance with paragraph 2 of the contract on January 5, 1970, Brunswick issued to Harper a delivery order wherein Harper was to cut, load and deliver to Brunswick 316 tons of pine pulpwood weekly from a described portion of the Rogers tract in Wayne *275 County, Georgia, owned by Brunswick. Under this delivery order cutting operations were to commence on the date of the delivery order and end when the trees on the described tract had been cut. The timber was to be delivered by truck to Brunswick's mill in Brunswick, Georgia. Harper has been a producer for Brunswick for about 35 years. During this time they have not cut any wood on any land not owned by Brunswick unless Harper bought some wood from somebody else, and they had not purchased any wood from other parties since prior to 1968. Three hundred sixteen tons of wood is approximately 110 cords. Brunswick has never loaned to Harper any of its equipment, but Brunswick had loaned Harper money for the purpose of purchasing equipment. During the 35 years Harper has been producing wood for Brunswick the relationship has been governed by a written contract which has been renewed annually. The only change in this contract has been slight increases in the compensation paid Harper. Rudy Woodard is the division manager of Brunswick who supervises that area of Wayne County in which the Rogers tract is located, and Lenox Anderson is the district manager of the division in which the Rogers tract is located. Lenox Anderson is the official of Brunswick with whom Harper dealt. Harper has 6 employees, 2 pulpwood saws, 1 truck, 1 tractor, 1 loader, and sleds. Brunswick loaned Harper the money to purchase the truck and tractor. It takes Harper's crew 5 full days, eight hours a day, to cut, haul and deliver approximately 325 tons of pulpwood per week. Under Harper's contract with Brunswick, Harper is furnished a delivery order for each tract of land to be cut and is shown the block of timber to be cut. Harper moves his equipment upon the designated tract, commences his cutting operations, and remains on the tract of land until the designated timber has been cut. Harper is then given a new delivery order for a different tract of land. The sizes of the tracts of land vary. Sometimes, it is 35 acres, or it may be from 10 to 15 acres. It is generally a tract of *276 land that Brunswick wants to clear cut and reset. Harper was paid according to the contract a specified sum for each ton of wood delivered to the mill of Brunswick. On Friday of each week, Mr. Lenox Anderson would advance to Harper by check drawn on Brunswick $50 for each load of wood delivered during that week. On the following Friday, any additional amount due Harper for the past week, based upon the weight of each load at the mill and the contract price, would be paid to them. Any overpayment would be deducted from the amount advanced to them from loads of wood delivered that week.
Wesley Cunningham, Jr. was working for Harper on January 23, 1970, the day he was killed. On that day Cunningham was sawing down, sawing up, and piling pulpwood at the stump, and he was killed when a tree fell on him. Harper withholds income tax and social security tax from the compensation of its employees and remits same to the proper governmental authorities. Harper does not pay any unemployment tax. Harper carries with Colonial Life Insurance Company what appears to be an accident insurance policy covering its employees. The premium for this policy is paid by Brunswick under written authorization from Harper directing Brunswick to pay the premium from funds due Harper by Brunswick. Harper is not required by Brunswick to carry this insurance policy, and Harper arranged for this coverage of its employees directly with the agent of the insurance company, Mr. Bob Gordon. Harper does not carry workmen's compensation insurance on its employees. Brunswick has never told Harper how many days a week Harper should work or directed Harper to hire or fire any particular employee. In the event the mill of Brunswick breaks down Mr. Lenox Anderson notifies Harper orally how many loads to send in that week. This is done at the request of Harper because it does not want its truck waiting at the mill while repairs are made.'
"This court fully comprehends that under the `any evidence rule' the award of the Deputy Director, affirmed by a *277 majority of the State board, must be sustained by the superior court if there is any competent evidence to support the award. In accordance with the above stated `any evidence rule' this court has carefully examined the evidence introduced before the deputy director and considered all favorable inferences that may be drawn therefrom. In the opinion of this court the evidence demanded a finding that Harper was not in fact the alter ego of Brunswick; that the contract with Harper as made by Brunswick is in good faith and not for the purpose of avoiding liability under the workmen's compensation act, or otherwise; and that Brunswick did not actually assume any control over Harper, or their employees, not granted in the contract between them.
"It is, therefore, the judgment of this court that the portion of the award finding that Wesley Cunningham, Jr. was an employee of Brunswick at the time of his death is not supported by `any evidence' in the record. Claimant asserted at the hearing before the deputy director and in her briefs filed with the board and this court that her claim fell within the provisions of Section 114-112 of the 1933 Code of Georgia, as amended. While the award of the deputy director, as affirmed by the board, did not make any finding on this issue, the court has considered same since it would be its duty to remand this appeal back to the board for a finding on this issue if the contention had any merit.
"After carefully considering the transcript of evidence the court holds as a matter of law that Section 114-112 of the 1933 Code of Georgia, as amended, is not applicable to this claim since the relationship between Brunswick and Harper was not one of principal contractor-subcontractor. Evans v. Hawkins, 114 Ga. App. 120 (150 SE2d 324). It is, therefore, the judgment of this court that the award of the deputy director, as affirmed by a majority of the Board of Workmen's Compensation, be and the same is hereby set aside."
A careful study of the entire record in this case reveals *278 that the superior court has clearly set forth the relevant facts, contract provisions, and has correctly stated the evidence as to material matters, has properly construed the contract and has directed attention to applicable decisions of this court which are controlling.
We agree with the court that, properly construed, the contract between the Harpers and Brunswick Pulp & Paper results in the relationship between them of employer and independent contractor and that the record is devoid of any evidence to support a conclusion that Brunswick Pulp & Paper has controlled or attempted to control the activities of the Harpers beyond that to which it was entitled to do under the terms of the contract, which is in no wise inconsistent with the relationship of employer-independent contractor. There is no basis for finding or holding that there was a relationship of master and servant, or of principal and agent between them, or that the Harpers were, for any reason or in any sense the alter ego of Brunswick Pulp & Paper Company. Consequently, finding the judgment of the superior court to be in full accord with the law applicable to the situation which this record presents, the judgment is
Affirmed. Deen and Clark, JJ., concur.
NOTES
[1] The findings and award of the single director were adopted on appeal to the full board, Chairman Lowery dissenting.