### 47585. JORDAN et al. v. TOWNSEND et al.

QUILLIAN, Judge. This is an appeal by the plaintiffs (appellants) from an order granting a summary judgment in favor of the defendant (appellee), Union Camp Corporation.

Plaintiff Rodney Dewayne Jordan, a minor, his three sisters and his mother and father, brought suit against L. C. Townsend, Willie West and Union Camp Corporation as the result of an automobile wreck. The complaint alleges that Union Camp employed Townsend and West to cut pine trees from Union Camp's land in southeast Georgia and to deliver same to Union Camp's plant in Savannah. On the date of the wreck West was driving a tractor-trailer owned by Townsend and had just completed delivery of a load of pine logs to Union Camp's Savannah Plant, which logs had been cut by Townsend, his agents and servants, including West, from Union Camp's property; and that at the time of the matters complained of defendant West was in and about the business of Union Camp.

Union Camp in its answer neither admitted nor denied the allegations with respect to how the collision occurred, but contended at that time L. C. Townsend was an independent contractor and therefore Union Camp could not be held liable for any negligence of L. C. Townsend or his agents or employees.

Union Camp filed a motion for summary judgment which was supported by affidavits and exhibits. The motion was granted and the case is here for review. *Held:*

The question for determination is whether or not there were genuine issues of material fact with respect to

whether L. C. Townsend was an agent-employee of Union Camp Corporation, or was an independent contractor.

"In determining whether the relationship of the parties under a contract for performance of labor is that of employer and servant or that of employer and independent contractor, the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract." *Hotel Storage, Inc. v. Fesler,* 120 Ga. App. 672, 674 (172 SE2d 174, 41 ALR3d 1049).

The employment contract between Union Camp and Townsend was an exhibit filed by the defendant in support of the motion for summary judgment. The contract provided that Union Camp would have no control over the time, method or manner in which Townsend performed timber harvesting services. However, the contract further stated: "Contractor will perform such services with his own employees, labor force, and equipment, or by or through his subcontractors. In so doing, contractor or his subcontractors will observe generally accepted forestry and logging practices *and the reasonable rules adopted by owner as applicable to timber harvesting on said timberlands.* Owner shall have no control over contractor's, or his subcontractors', methods, employees or equipment or the time of the performance of said contract *except as herein provided* and contractor, or his subcontractors, will perform each contract by his own methods, except for such written specifications as may be furnished by owner."

This provision of the contract retained in Union Camp the authority to control the manner and method of the harvesting. There were no restrictions on what "reasonable rules" might be adopted by Union Camp or

what the rules might consist of. Whether Union Camp did in fact exercise this authority is not material; there need only be the right to control the time, method and manner of executing the work. *Old Republic Insurance Co. v. Pruitt,* 95 Ga. App. 235 (97 SE2d 521).

The granting of the summary judgment was error.

*Judgment reversed. Bell, C. J., Pannell, Deen, Evans, and Stolz, JJ., concur. Hall, P. J., and Eberhardt, P. J., dissent. Clark, J., not participating.*

ARGUED OCTOBER 4, 1972 — DECIDED FEBRUARY 23, 1973 — REHEARING DENIED MARCH 22, 1973 — 

*Adams, Adams, Brennan & Gradner, Edward T. Brennan, Richard A. Rominger,* for appellants.

*Bouhan, Williams & Levy, Leamon R. Holliday, III,* for appellees.

HALL, Presiding Judge, dissenting. In my opinion there is very little predictability to be found in the appellate decisions of this state on the distinction between servant and independent contractor. The control or right to control test is to say the least esoteric. "The distinction between servant and independent contractor is commonly said to turn on whether the employer has retained control or right of control over the details of the work, or as one writer has put it, whether the employer has hired services or has bought the product of those services . . . Perhaps the control test has been overemphasized in judicial reasoning. We have seen how tenuous, and often fictitious, control is even in clear master and servant cases, and how its use as a justification of vicarious liability is generally associated with the felt need for finding some sort of fault in the master. We have seen too how this attempted justification falls short and how the chief warrant for vicarious liability must be found in the principle that an

enterprise (and its beneficiaries) should pay for the losses caused by the risks which it creates (even without its fault). In this view the existence of a general right of control may afford an added subsidiary reason for holding the employer who has it (e.g., an admonition to care in selecting a competent or a financially responsible contractor), but its absence would scarcely justify conferring upon an entrepreneur immunity for risks of his business. If we are looking for risks fairly allocable to an enterprise then there is much significance in the question 'whether or not the work is a part of the regular business of the employer.' The real question in all independent contractor cases is whether a man may 'farm out' or 'lop off' some of his affairs and escape liabilities in connection with them. No general policy forbids this . . . The primary question is whether the task which caused the injury was actually and in good faith farmed out to another. It is here that the question of control comes in. As a generalization it may be said that an employer has farmed out or turned over a task to another where he has relinquished control over it. But control is not the all important thing it is sometimes made out to be and it is not a constant factor. The master, of course, alway does have the general right of control over his employees in the sense that he can give them orders, train them, hire and fire them. But he very often lacks any effective spot control over the conduct that brings about an accident. There are many independent contractor situations in which the employer has far greater spot control over the details of the work . . . Business enterprises, too, commonly farm out many tasks which may well be regarded as normal incidents to their enterprises . . . Questions arise mainly where an enterprise makes regular use of individuals (e.g., salesmen or newsboys) or units that would ordinarily be regarded as subordinate to it (such as the filling stations of the great oil companies), in order to get something done

which would ordinarily be regarded as a part of its enterprise. It is in this type of situation that courts will carefully scrutinize the question of control. It is here that the bulk of litigation occurs. And it is here that immunity for the conduct of independent contractors tends most to thwart allocation of losses to responsible enterprises, and therefore that the defense of independent contractor meets mounting disfavor." 2 Harper and James, Law of Torts, 1395, 1400, 1401, 1402, § 26.11.

The contract in this case is almost identical to that found in *Lyons v. Employers Mut. Liab. Ins. Co.*, 127 Ga. App. 268 (193 SE2d 244) and *Wood v. Brunswick Pulp & Paper Co.*, 119 Ga. App. 880 (169 SE2d 403). In both of these cases the formal contract was held by its terms to establish the relationship of independent contractor. The *Wood* case was allowed to go to the jury on the question of whether Wood was in fact the alter ego of Brunswick and whether the contract was made in good faith. In other words, whether a jury would be authorized to find that the formal contract was sham and that actual control remained in the alleged employer. No such claim is made in this case and the decision is based upon the terms of the formal contract. We must look to the contract as a whole and not to some isolated part thereof to determine whether there is any "general right of control" reserved by Union Camp Corporation. In my opinion there is no "general right of control," and I would affirm the judgment of the trial court.

EBERHARDT, Presiding Judge, dissenting. As I read this record, including the pleadings, affidavits, interrogatories, depositions and the documentary evidence, this is a classic employer-independent contractor situation.

There was a written contract under which the parties operated. It provided that the relationship should be that of employer-independent contractor, and that the employer, Union Camp, should not have the right of

control or supervision of the contractor and his employees save to require the end result to be accomplished in accordance with the specifications supplied. It was to have no right to hire or discharge Townsend's (contractor) employees. It could not direct the employing or discharging of them, nor could it direct what equipment the contractor would use in cutting and delivering the pulpwood. The wood was to be cut (generally from lands of the employer, Union Camp) on tracts to be designated, and deliver to its plant in Savannah at a stated rate per cord, or unit of weight. Neither Townsend nor his employees ever appeared on Union Camp's payroll. There were no deductions from payments for the delivered wood for social security, taxes, etc. On the other hand, Townsend hired all of his men, paid them according to the agreement he made with them, made the necessary deductions from wages and filed the required reports and remittances to the government, and paid them from his own funds. He was free to hire and discharge whom he would and for such reasons as he might determine, to pay such wages as he might determine in contracting with his employees, to give them instructions and directions as to when and where and how to perform their tasks. All of this he did, and at no time did Union Camp exercise or attempt to exercise any such powers. See *Weiss v. Kling,* 96 Ga. App. 618 (101 SE2d 178).

Townsend supplied his own equipment for use by his employees in the cutting and delivering of the pulpwood, though it appears that as to some of it Union Camp had assisted him in the purchase of it by financing it for him under written contracts providing for repayment in monthly payments. (While this is evidence indicating the independent contractor relationship, *Malcom v. Sudderth,* 98 Ga. App. 674, 688 (106 SE2d 367); *Baird v. Travelers Ins. Co.,* 98 Ga. App. 882, 885 (107 SE2d 579), if it should appear that the ownership of the equipment was

in the employer it would not proscribe the independent contractor relationship. *Central R. & Bkg. Co. v. Grant,* 46 Ga. 417; *Zurich Gen. Acc. &c. Ins. Co. v. Lee,* 36 Ga. App. 248 (2c) (136 SE 173); *Bentley v. Jones,* 48 Ga. App. 587 (173 SE 737); *Banks v. Ellijay Lbr. Co.,* 59 Ga. App. 270 (200 SE 480)). The test is not the ownership of the equipment, but whether the employer (Union Camp) had the right to direct the time, method, manner, means, etc. of the execution of the work to be done, or whether it in fact did so.

Townsend was required to, and did, submit evidence of his having procured liability insurance upon his motor vehicles used in the operation, and workmen's compensation insurance for his employees. But this in no way affects the relationship between himself and Union Camp. It was for the benefit of the general public that the liability insurance was required and for his employees that the compensation insurance was provided. Owners have generally required contractors engaged in building to submit evidence of liability, compensation and fire insurance, and often to post payment and performance bonds. This has never been regarded as an act in violation of the employer-independent contractor relationship. It has nothing to do with the method or means or manner of accomplishing the job to be done.

The majority has seized upon the lone provision in the contract that it shall be "subject to the reasonable rules adopted by the owner as applicable to timber harvesting on said timberlands." The harvesting of timber has undergone vast changes in the last two or three decades. Much knowledge has been obtained through experience in the management of timberlands, and all has not yet been learned. This provision simply enables the parties to innovate procedures in the harvesting that have been found to be more economic, or better suited to the use of the land for timber growing, such as, for example, the "clean-cutting" of lands by owners who are engaged in a

business which requires the replanting of its lands and growing of another crop of timber suitable for its use as rapidly as can be done. If the owner wishes to adopt a rule that its lands are to be "clean-cut" the pulpwood producer will take that into account in calculating his cost and hence the price for which he will do the job. If selective cutting is to be employed, the cost and price may be different. But the method, manner and time of performance of the contract are not otherwise affected. The "reasonable rules" referred to are specifically related to those "applicable to timber harvesting on timberlands." I do not conceive of this as being violative of the employer-independent contractor relationship.

There are slight differences in the contract here and that in *Lyons v. Employers Mut. Liab. Ins. Co.,* 127 Ga. App. 268 (193 SE2d 244), but I do not regard them as being substantial, or as requiring a different result.

I think the trial court has properly construed the contract. There is a total absence of evidence showing that Union Camp has at any time attempted to assume control over Townsend or his employees. I would affirm.