Herbert A. BLACKWELL and Johnnie Sue Blackwell, Plaintiffs

v.

Helen C. TAYLOR, Executrix of the Estate of C. C. Taylor, d/b/a C. C. Taylor Construction, and Georgia Power Company, Defendants.

Civ. A. No. 79-34-MAC.

United States District Court,
M. D. Georgia,
Macon Division.

Sept. 2, 1980.

Robert A. Elsner, Scheer & Elsner, Arthur Gregory, McClain, Mellen, Bowling & Hickman, Atlanta, Ga., for plaintiffs.

Wallace Miller, Jr. and Wallace Miller, III, Jones, Cork, Miller & Benton, Joseph H. Chambless, Harris, Watkins, Taylor & Davis, Macon, Ga., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

OWENS, District Judge.

Plaintiffs Herbert A. and Johnnie Sue Blackwell brought this action seeking recovery for injuries sustained by Mr. Blackwell when a temporary structure which was being erected on defendant Georgia Power's Wallace Dam, Lake Oconee, project collapsed. Plaintiffs allege that the collapse of the structure was due to the joint negligence of defendants Georgia Power and Taylor Construction. Georgia Power's motion to grant summary judgment in its favor pursuant to Rule 56, Fed.R.Civ.P. is now ready for decision.

The material facts are not in dispute. Georgia Power contracted with Allis–Chalmers, a Pennsylvania corporation, whereby Allis–Chalmers was to perform certain prefabrication and installation of turbines and generators for six generating units in the Wallace Dam project power house. Allis–Chalmers subcontracted defendant Taylor Construction Company (hereinafter Taylor) to build a temporary structure in which sections of the turbines were to be assembled and stored. Mr. Blackwell, an employee of Allis–Chalmers, whose job it was to supervise the fabrication of spiral cases to be used in the generating units, was inside the structure which was still under construction when a portion of the structure

collapsed on top of him during high winds. Mr. Blackwell received worker's compensation benefits on account of his injuries, apparently under the coverage carried by Allis–Chalmers.[1] Subsequently, plaintiffs brought this tort action alleging that the collapse of the structure was caused by negligent construction by defendant Taylor, and negligent maintenance of the structure by defendant Georgia Power, in that the walls of the structure were not adequately braced to prevent them from flexing and thus causing the building to collapse. Mr. Blackwell seeks damages for medical expenses, lost wages, and pain and suffering, and Mrs. Blackwell seeks damages for loss of the services and consortium of her husband.

Defendant Georgia Power contends that plaintiffs are limited exclusively to the remedy of recovery under the Georgia Worker's Compensation Act. Ga.Code Ann. § 114–112 provides, "A principal, intermediate or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract, to the same extent as the immediate employer." Under Ga.Code Ann. § 114–103, as amended, the rights and remedies granted to employees under the worker's compensation act exclude all other rights and remedies of the employee "at common law or otherwise, on account of such injury" other than the employee's right to bring an action against a third party tortfeasor. The purpose of this provision is to preclude common law remedies where the workman is entitled to recover worker's compensation.

The above sections were applied by the Georgia Court of Appeals in the recent case of *Clements v. Georgia Power Co.,* 148 Ga. App. 745, 252 S.E.2d 635 (1979), a case very similar to the present one. In *Clements,* Georgia Power had entered into a contract with United Engineers and Constructors, Inc. to engineer and construct certain addi-

tions to Georgia Power's Plant Yates. Two employees of United Engineers fell to their deaths while in the process of constructing a boiler. The wives of these employees brought wrongful death actions against Georgia Power contending, as do plaintiffs in the present case, that Georgia Power "as owner and occupier of the premises, negligently failed to maintain the premises in a safe condition . . . and in making a negligent inspection of the work in progress." The Georgia Court of Appeals held that an employee of a subcontractor may sue a third party as a tortfeasor under Ga.Code Ann. § 114–103 only when the subcontractor is an independent contractor and not an employee of the third party within the relationship of master and servant. The court held that, since the terms of the contract between Georgia Power and United Engineers gave Georgia Power the right to control the manner of executing the work, United Engineers was a servant of Georgia Power and not an independent contractor. Therefore, the wives of the deceased employees were limited to seeking recovery under the Georgia Worker's Compensation Act. *See Savannah Electric and Power Co. v. Edenfield,* 118 Ga.App. 531, 164 S.E.2d 366 (1968), for a similar holding.

The question for determination in the present case is therefore whether the contract between Georgia Power and Allis–Chalmers creates the relationship of independent contractor or master and servant. If Allis–Chalmers is a servant of Georgia Power, rather than an independent contractor, plaintiff Blackwell, as an employee of Allis–Chalmers, cannot maintain this tort action against Georgia Power, but instead is limited to his recovery for his injuries under worker's compensation.

█ In determining whether the relationship of the parties under the contract for performance is that of master and servant or that of employer and independent contractor, the test is whether the contract gives, or the employer assumes, the right to

---

1. Under the Georgia Worker's Compensation Act, an injured employee can recover all of his medical expenses, including travel expenses in-

curred for treatment, two–thirds of his lost wages, and benefits for partial or total disability.

control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity with the contract, *Clements v. Georgia Power Co., supra; Sloan v. Hollis Sporting Goods Shop,* 145 Ga.App. 255, 243 S.E.2d 673 (1978). Although the contract states that Allis–Chalmers is an independent contractor, that designation is not controlling if the provisions of the contract show that Georgia Power had control over Allis–Chalmers' performance of the contract. In the case of *Jordan v. Townsend,* 128 Ga.App. 583, 197 S.E.2d 482 (1973), the employer Union Camp Corporation provided in its contract with its worker Townsend that Union Camp would have no control over the time, manner, and method of performing the services contracted for. The contract further stated:

> [C]ontractor or his subcontractors will observe generally accepted forestry and logging practices *and the reasonable rules adopted by owner as applicable to timber harvesting on said timberlands.* Owner shall have no control over contractor's . . . methods, employees, equipment, or time of the performance . . . *except as herein provided* . . . (emphasis supplied by decision).

The court held that this provision of the contract retained in Union Camp the authority to control the manner and method of the harvesting, since there were no restrictions on what reasonable rules might be adopted by Union Camp.

> Whether Union Camp did in fact exercise this authority is not material; there need only be the right to control the time, method, and manner of executing the work.

█ Having considered the entire contract between Georgia Power and Allis–Chalmers, the court is of the opinion that the contract gives Georgia Power the right to control the time, manner, and method of executing the work of Allis–Chalmers so as to create a master–servant relationship.[2]

Georgia Power retained the right to control much of the work done by Allis–Chalmers, including the assembly of the spiral cases and the erection of temporary structures such as the one which collapsed in this case. Paragraph 14.06.2 of the "Detailed Specifications," Exhibit 2 of the contract provides:

> Erection of the spiral case shall be in accordance with the contractor's approved written procedure, the manufacturer's drawings, and *as directed by the Project Superintendent* and the Erection Supervisor (emphasis supplied).

Paragraph 14.02.1 of the "Detailed Specifications" provides:

> Order of erection of each spiral case extension shall be *as directed by the Project Superintendent* (emphasis supplied).

Paragraph 3.01(e) provides that the contract shall furnish:

> All temporary erection enclosures or covers that are required for protection of the Purchaser's equipment during erection as directed and approved by the Manufacturer's Supervisor or *Project Superintendent* (emphasis supplied).

Paragraph 13.03.1, which deals with welding procedures, provides:

> For inclement weather an enclosure *approved by the Project Superintendent shall be required* and shall be furnished by the Contractor (emphasis supplied).

The Project Superintendent referred to in the above paragraphs is denoted in the contract as the Superintendent of the project for the Construction Department and the authorized representative at the site of the purchaser Georgia Power. Under the contract the Project Superintendent has the right to direct much of the work of Allis–Chalmers. In light of these as well as other provisions of the contract, it is clear that Georgia Power, through its Project Superintendent, has the right to control the time, manner, and method of executing the

---

2. Plaintiffs themselves argue at one point that "the contract between Georgia Power and Allis–Chalmers categorically establishes that Georgia Power retained absolute control, not only over the premises, but also over the performance of Allis–Chalmers." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at p. 2.

work.[3] The fact that the building was being erected by Taylor, the subcontractor of Allis–Chalmers, did not affect Georgia Power's right to direct the work. Thus, the contract between Georgia Power and Allis–Chalmers created a master–servant relationship. Since plaintiff is an employee of Allis–Chalmers, which is itself a servant of Georgia Power, plaintiff was, under Georgia worker's compensation law, an employee of Georgia Power. *Savannah Electric and Power Co. v. Edenfield, supra.* Therefore, plaintiffs' exclusive remedy was before the State Board of Worker's Compensation.

■ Plaintiffs contend, nevertheless, that defendant Georgia Power may be held liable for plaintiff's injuries under Georgia Code Ann. §§ 105–502(3) and/or 105–502(4). Those sections provide:

The employer is liable for the negligence of the contractor . . .

3. If the wrongful act is a violation of a duty imposed by express contract upon the employer.

4. If the wrongful act is a violation of a duty imposed by statute.

Plaintiffs contend that defendant Georgia Power is liable under § 105–502(3) since it retained by the contract the duty to ensure the safe performance of the work. Paragraph 32 of Exhibit 3 to the contract, cited by plaintiffs in support of this argument, provides in pertinent part:

During all phases of the work, the Contractor [Allis–Chalmers] shall maintain adequate safety . . . facilities. All work shall conform to current safety practices as set forth in the Manual of Accident Prevention in Construction . . . [and] the Occupation Safety and Health Act and associated rules and regulations. . . . The purchaser [Georgia Power] will require such additional safety meas-

---

3. Other provisions of the contract upon which the court bases its opinion that a master–servant relationship existed between Georgia Power and Allis–Chalmers include:

Paragraph 6.01, "Detailed Specifications"—The contractor shall install, adjust, test, and test run the equipment under the supervision of erection *supervisors provided by and at the expense of the Purchaser* [Georgia Power].

Paragraph 10.03, "Detailed Specifications"—The following list of *components* . . . are provided as a general description of the equipment as *received and* stored or to be *stored by the Purchaser* at the site . . . miscellaneous materials such as piping, conduit, anchorage material . . . and other miscellaneous parts *to be furnished by the Purchaser* are not listed.

Paragraph 12.02, "Detailed Specifications"—Prior to installation of major equipment the Contractor shall submit to the *Project Superintendent for written approval a plan of erection* outlining in detail each successive operation and method of procedure.

Paragraph 12.03, "Detailed Specifications"—The Contractor shall install and erect all *equipment furnished by the Purchaser* . . . in accordance with . . . and the instructions of the erection supervisors and/or *as directed by the Project Superintendent.*

Paragraph 14.01.3, "Detailed Specifications"—The Contractor's attention is directed to the necessity for close cooperation in scheduling and coordinating this work, and all other work, with other contractors *and the*

*Project Superintendent.* In the event of a dispute, *the Project Superintendent's decision will be final.*

Paragraph 16.01.5, "Detailed Specifications"—The erection of these parts and material shall, in addition, be in accordance with the Contractor's approved written procedures, . . . *and as directed by the Project Superintendent.*

Paragraph 17.02.1, "Detailed Specifications"—The Contractor shall install all such piping, tubing, connections, and indicators in accordance with the manufacturer's drawings and *directions of* . . . and/or *the Project Superintendent.*

Paragraph 13, "General Provisions"—The Purchaser may appoint inspectors to follow the progress of the work, *and the manner in which it is being done.* . . .

Paragraph 33, "General Provisions"—The Contractor and his forces shall also observe and comply with all rules and regulations *which may be prescribed by the Purchaser* in order to promote safety in the execution of the work.

Paragraph 42, "General Provisions"—The Purchaser will maintain a *supervisory force* on the work, *under which all contractors shall work and which will be vested with authority to enforce the proper performance of all work, and to be held responsible for the sequence of construction* for the work as a whole as well as in part.

ures as the nature and condition of the work require . . .

This provision of the contract clearly places the duty to provide adequate safety measures upon the contractor Allis–Chalmers and not on defendant Georgia Power. Plaintiffs have failed to show any reasons why construction of the temporary structure would have required Georgia Power to provide additional safety measures.

Plaintiffs further contend that Georgia Power is liable under Ga.Code Ann. § 105–502(4) since it violated the duty imposed by Ga.Code Ann. § 105–401 on all landowners to exercise reasonable care in keeping the premises safe. The case on which plaintiffs rely for this argument, *Millard v. AAA Electrical Contractors*, 119 Ga.App. 548, 167 S.E.2d 679 (1969), is not applicable to the present case. In *Millard*, the injured party was not an employee of the independent contractor who was employed by the shopping center, but was a third party who was on the premises of the shopping center as a customer. Unlike the present case, *Millard* involved an independent contractor, and recovery under the Worker's Compensation Act was not at issue.

For the above stated reasons defendant Georgia Power's motion for summary judgment is hereby GRANTED.

SO ORDERED.