Argued and submitted March 12, affirmed July 3, 1996

In the Matter of the Compensation of
Richard A. Johnson, Claimant.

LIBERTY NORTHWEST INSURANCE CORP.
and Brod & McClung-Pace Co.,
*Petitioners,*

*v.*

Richard A. JOHNSON,
*Respondent.*

(WCB No. 94-06893; CA A89998)

919 P2d 529

John Klor argued the cause for petitioners. With him on the brief was Marjie Masters-Gittins.

Phil H. Ringle, Jr., argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and Landau and Leeson, Judges.

DEITS, P. J.

**DEITS, P. J.**

Employer seeks review of an order of the Workers' Compensation Board (Board) concluding that claimant's injury was compensable. We affirm.

We quote the material facts, which are undisputed, from the order of the administrative law judge (ALJ):

"Claimant is a 28-year-old male. During times relevant to this proceeding, he worked for the employer as a receiving clerk.

"On September 7, 1994, near the end of his unpaid lunch period, he was smoking a cigarette in a smoking area. He heard the 'one-minute' buzzer, which is sounded to give workers notice that they have one minute to return to their work stations. Claimant took a few puffs on his cigarette and then began walking back to his station. He passed two co-workers.

"One of the men claimant passed was a lead person and the other was a man who worked under the lead person. Claimant commented to the latter man something to the effect that it would be of no benefit to the man to 'brown-nose' his lead person. Claimant spoke the words in jest. It is apparently common for the employees to 'kid' one another and to engage in jocular comments, some of which might appear barbed. It is not common for employees to engage in physical contact with one another.

"Immediately following the comment that claimant made to the co-worker, the man rose and came toward claimant. The co-worker grabbed claimant in a spirit of fun and twisted him down to the ground. Claimant experienced a pop and pain in his left knee. Claimant at some point had put up his hands to ward off physical contact, but did not strike the man who grabbed him.

"Claimant could not rise immediately and required assistance. He did finish his day's work, but continued to have difficulty with the knee.

"Claimant saw [an orthopedic surgeon], who referred him for an MRI scan. Claimant was taken off work. The MRI indicated that claimant had a torn anterior cruciate ligament, and claimant was started on physical therapy.

"On May 18, 1994, the insurer denied the compensability of the injury on the grounds that the injury did not occur within the course and scope of employment."

The ALJ affirmed employer's denial of compensability and rejected employer's defense that claimant was an active participant in an assault or combat under ORS 656.005(7)(b)(A). However, he concluded that claimant's injury resulted from horseplay and that there was not a "sufficient work connection" between that injury and conditions of claimant's employment. Thus, he denied compensability of claimant's injury.

The Board adopted the ALJ's findings of fact, but a majority of the Board reversed the decision pertaining to the compensability of claimant's injury. The majority first concluded that claimant's injury took place on employer's premises and, therefore, occurred in the course of his employment. *See Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 867 P2d 1373 (1994). The majority then concluded that claimant's injury arose out of his employment, because the conditions of claimant's employment put him in a position to be injured:

"As found by the ALJ, there was evidence that it was common for employees to verbally tease and taunt one another. Under such circumstances, we find that the conditions of claimant's employment put him in a position to be the target of retaliatory actions resulting in physical injury. Hence, claimant satisfied the 'arising out of employment' element."

The Board also noted that the employer's policy prohibiting horseplay had "little relevance" to the analysis, because claimant was a "victim" of his coworker's horseplay.

Employer contends that the Board erred in concluding that claimant's injury "[arose] out of and in the course of employment" under ORS 656.005(7)(a). An injury is compensable if it "aris[es] out of and in the course of employment." ORS 656.005(7)(a). Both the "arising out of" and "in the course of" elements are part of a single inquiry: "whether the relationship between the injury and the employment is sufficient that the injury should be compensable." *Andrews v. Tektronix, Inc.*, 323 Or 154, 161, 915 P2d 972 (1996) (citing

*Norpac Foods*, 318 Or at 366). The "in the course of" require-ment focuses on the "time, place, and circumstances of the injury." *Id.* It "demands that the injury be shown to have arisen within the time and space boundaries of the employ-ment, and in the course of an activity whose purpose is related to the employment." Larson, 1 *Workmen's Compen-sation Law*, § 14.00, 4-1 (1995). The "arising out of" element concerns "the causal connection between the injury and the employment." *Andrews*, 323 Or at 161.

■ We turn first to employer's assertion that the Board erred in concluding that claimant's injury occurred "in the course of" his employment. Employer argues that, because claimant was injured during an unpaid lunch break, the Board's conclusion was wrong. We disagree. Generally, an injury to an employee on the employer's premise during a lunch break occurs in the course of the employment. *Olsen v. SAIF*, 29 Or App 235, 562 P2d 1234, *rev den* 280 Or 1 (1977). Under these circumstances, the Board properly concluded that claimant's injury was "in the course of" his employment.

■ We next address plaintiff's assertion that the Board erred in concluding that claimant's injury arose out of his employment. In *Kammerer v. United Parcel Service*, 136 Or App 200, 901 P2d 860 (1995), an opinion issued on the same day as the Board's order here, we discussed the compensabil-ity of injuries caused by horseplay. In that case, the claimant was walking through a designated employee parking lot when one of her coworkers "flicked" a plastic tag at her. The tag struck her in the eye causing an injury. The employer denied compensability and the referee affirmed the denial on the ground that there was no evidence that the employer had acquiesced in the tag flicking behavior. The Board affirmed, adopting the referee's order. We reversed the Board and held that the claimant's injury was compensable.

On judicial review, the only issue was whether the claimant's injury arose out of her employment. We explained that compensability depends primarily on whether the claim-ant was a participant in the horseplay. With respect to active participants, we stated:

> "Under Oregon case law, an active participant or instigator
> in horseplay who is injured may not receive compensation

unless the employer knew or should have known of and acquiesced in the behavior." *Id.* at 204.

That rule is based on the idea that a participant in horseplay has "voluntarily stepp[ed] aside from the employment," unless, through employer acquiescence, horseplay is considered "an aspect of the work environment." *Id.* With respect to nonparticipating victims of horseplay, we stated:

> "Oregon courts have not directly addressed whether a nonparticipant in horseplay may recover workers' compensation. Professor Larson has stated that '[i]t is now clearly established that the non-participating victim of horseplay may recover compensation.' Larson, 1A *Workmen's Compensation Law* § 23.10, at 5-178. Indeed, a majority of states allow recovery by an innocent bystander without a showing of knowledge or acquiescence by the employer. *See id.* at 5-178 n 1. The reason for the difference in treatment between a participant and a nonparticipant is that there is no voluntary deviation from employment on the part of an innocent bystander. * * *
>
> "* * * * *
>
> "[A] claimant who is not the initiator nor an active participant in an assault or combat may recover compensation. *See Irvington Transfer v. Jasenosky*, 116 Or App 635, 639-40, 842 P2d 454 (1992) (claimant assaulted by coworker entitled to compensation). An innocent bystander engaged in normal work activities cannot be understood to have 'stepped aside' from employment, and may recover when assaulted on the job. Similar reasoning applies to an innocent victim of horseplay. Thus, employer acquiescence in the horseplay should have no bearing on whether such a bystander is entitled to compensation." (Footnote omitted.) *Id.* at 204-05.

Thus, under *Kammerer*, the key issue here is whether claimant was an active participant in the horseplay incident that caused his injury. The Board determined that claimant was a victim of his coworker's horseplay. Employer, relying on *Kessen v. Boise Cascade Corp.*, 71 Or App 545, 693 P2d 52 (1984), argues that claimant was not a nonparticipating victim of horseplay, because he "initiated the horseplay by verbally teasing his co-worker." We disagree.

In *Kessen*, the claimant, a truck driver, was angered when his supervisor refused to give him a night off from work. The claimant stormed out of his supervisor's office and slammed the door. The supervisor called the claimant back, and told him to close the door properly. The claimant came back and began complaining to his supervisor, claiming that he favored the day shift drivers. We described the facts immediately preceding claimant's injury as follows:

> "Suddenly, claimant turned his anger directly at Huff, another truck driver, who had just completed a 12-hour shift and was seated in a swivel chair with one foot propped up on the driver's desk where claimant had signed in. In anger, claimant began pointing and shaking his finger at Huff. Speaking in a loud voice, he moved toward Huff, accusing him of being one of those 'favored few.' He then grabbed Huff's wrapped and bandaged left arm, which had only recently been removed from a cast. (Huff had broken the arm two and a half weeks before.) Huff rose from his chair and nailed claimant with a right to the jaw, causing the injuries resulting in this proceeding." *Id.* at 547.

We affirmed the Board's conclusion that the claimant's injuries were not compensable on the ground that he was an "active participant" in an assault under *former* ORS 656.005(8)(a).[1] We stated:

> "Claimant was an active participant in the altercation. Although he was the recipient of the only blow struck, he was the one who, because of his anger, vocal tirade and threatening gestures, actually initiated the fight. We agree with the referee in his characterization of claimant as being the aggressor." *Id.* at 548.

The facts of *Kessen* are a far cry from those here. In *Kessen*, the claimant's aggressive conduct, including pointing and shaking his finger and grabbing his coworker's broken arm, was not only itself physical but also invited a physical response. Claimant's comment here to the effect that his coworker was a "brown-noser" was made in jest and not intended to incite the resulting playful physical attack. The Board adopted the ALJ's finding that there was no credible evidence that claimant initiated the physical contact with his

---

[1] That provision has since been renumbered ORS 656.005(7)(b)(A).

coworker, that he had any reason to expect that physical conduct would result from his remark, or that he actively participated in the wrestling incident. Those findings are supported by substantial evidence and support the Board's determination that claimant was a victim of his coworker's horseplay. Thus, as in *Kammerer,* the fact that claimant's injury was the result of his coworker's horseplay does not preclude him from receiving compensation for his injury. We conclude that there was a sufficient causal connection between the injury and the employment. Accordingly, the Board properly concluded that claimant's injury was compensable.

Affirmed.