# IN THE SUPREME COURT OF IOWA

No. 09–0426

Filed July 23, 2010

**XENIA RURAL WATER DISTRICT** and
**EMCASCO INSURANCE COMPANY,**

Appellees,

vs.

**NORMAN VEGORS,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Robert Hutchison, Judge.

Workers' compensation claimant appeals district court denial of benefits based on the willful injury affirmative defense in Iowa Code section 85.16(3) (2003). **DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**

Tom L. Drew of Drew Law Firm, P.C., Des Moines, and Kristin H. Johnson, Clive, for appellant.

Iris Post of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

**STREIT, Justice**.

An employer claims it is not responsible for injuries sustained when a worker got hit by a truck driven by a fellow employee. The district court reversed the industrial commissioner's award of worker compensation benefits based on Iowa Code section 85.16(3) (2003), an affirmative defense for willful injury. We reverse the district court in part and remand the case to the industrial commissioner for a determination of whether the claimant proved he did not substantially deviate from the course of employment.

## I. Background Facts and Prior Proceedings.

Norman Vegors worked as a machine inspector for Xenia Rural Water District, a company that installs rural water lines. Vegors was injured at work after a coworker, Casey Byrd, hit him with a pickup truck. Vegors had his hands full and "wiggled [his] butt" at Byrd. Vegors testified that he did so to acknowledge or say hi to Byrd. Vegors then leaned over the bed of his own truck. After this, Byrd attempted to bump Vegors with the mirror of his truck but instead hit Vegors with the truck bed.

Vegors testified that he and Byrd commonly acknowledged each other even when their hands were full, including, for example, waving the boom of the track hoe at the other. Xenia employees testified that Vegors had been involved in a prior incident for which he was disciplined and that he admitted to his supervisor that he and Byrd had just been goofing around.

Vegors sought workers' compensation benefits, and Xenia contested benefits, arguing Vegors was barred from recovering because he engaged in horseplay and asserting the affirmative defense of willful injury. The deputy commissioner held that Xenia, as the employer, had

the burden to prove the defense of horseplay. The deputy commissioner found Vegors intended to shake his hind end as a means of communication and not to initiate, instigate, or participate in the horseplay which led to the injury, and, therefore, recovery of workers' compensation benefits was not barred. The commissioner affirmed the decision to award benefits and, although the deputy had not discussed it, separately addressed the affirmative defense found in section 85.16(3) barring compensation when injury is caused by the "willful act of a third party directed against the employee for reasons personal to such employee." The commissioner held the defense did not apply because a coworker is not a third party.

Xenia sought judicial review. The district court addressed the question of whether "the agency erred in finding that petitioners did not meet their burden of proof that the claimant's alleged injury was the result of horseplay, and that the petitioners did not prove an affirmative defense pursuant to Iowa Code § 85.16(3)." The district court reversed and held Vegors was barred from receipt of benefits. Vegors appealed.

## II. Scope of Review.

An appeal of a workers' compensation decision is reviewed under standards described in chapter 17A.19(10). Iowa Code § 86.26; *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 508 (Iowa 2003). "We review the district court decision by applying the standards of the [Iowa] Administrative Procedure Act to the agency action to determine if our conclusions are the same reached by the district court." *Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.*, 650 N.W.2d 609, 612 (Iowa 2002). A reviewing court may reverse the decision of the workers' compensation commissioner if it is unsupported by substantial evidence in the record. Iowa Code § 17A.19(10)(*f*).

Under chapter 17A, when the legislature has "clearly . . . vested" an agency with authority to interpret a statute, this court will only reverse a decision of statutory construction which is irrational, illogical, or wholly unjustifiable. Iowa Code § 17A.19(10)(*l*). When the agency has not "clearly been vested" with such authority, this court will review questions of statutory interpretation for errors at law. Iowa Code § 17A.19(10)(*c*).

The workers' compensation commissioner is generally charged by the legislature with the duty to "[a]dopt and enforce rules necessary to implement" workers' compensation laws. Iowa Code § 86.8. We have previously found that the legislature did not delegate the interpretation of chapter 85 to the commissioner. *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004); *see also Rojas v. Pine Ridge Farms, L.L.C.*, 779 N.W.2d 223, 231 (Iowa 2010) ("It is well-settled law that the legislature did not clearly vest the workers' compensation commissioner with the power to interpret the workers' compensation statutes."). We recently clarified in *Renda v. Iowa Civil Rights Commission*, ___ N.W.2d ___, ___ (Iowa 2010), that the court must also determine whether the agency has been vested with authority to interpret the relevant phrases and individual statutes. Here, the agency's analysis involved the interpretation of Iowa Code section 85.3(1) to determine whether the employee's injuries were sustained "arising out of and in the course of the employment." The agency also interpreted Iowa Code section 85.16(3), specifically the term "third party."

Although the legislature has not provided an explicit written statement regarding the workers' compensation commissioner's authority, we must determine whether the legislature clearly vested the agency with authority to interpret the statutes at issue. Iowa Code

§ 17A.19(10)(*c*), (*l*). After examining chapter 85, we find the workers' compensation commissioner is not clearly vested with the authority to interpret Iowa Code sections 85.3(1) and 85.16(3). As noted in *Renda,* "we have not concluded that a grant of mere rulemaking authority gives an agency the authority to interpret *all* statutory language." *Renda,* ___ N.W.2d at ___. There is no language in either statutory section indicating a desire by the legislature to vest the commissioner with authority to interpret the subsections at issue. *See* Iowa Code §§ 85.3(1), 85.16(3). Additionally, the relevant terms—"arising out of and in the course of the employment" and "third party"—have "an independent legal definition that is not uniquely within the subject matter expertise of the agency." *Renda,* ___ N.W.2d at ___. Therefore, we review the agency's statutory interpretation here for errors at law. Iowa Code § 17A.19(10)(*c*).

**III. Merits.**

**A. Burden to Establish Horseplay or Lack Thereof.** Xenia, Vegors's employer, argued Vegors cannot be compensated because he engaged in horseplay. The deputy commissioner held that Xenia had the burden to demonstrate horseplay because it is a defense. The deputy commissioner then determined Vegors had not engaged in horseplay. The commissioner affirmed the deputy commissioner but did not address the proper burden. Upon judicial review, the district court reversed the agency and held the claimant bears the burden to demonstrate that the injury arose out of and in the course of employment and therefore, to demonstrate the injury was not the result of horseplay. It appears the district court did not reach an ultimate conclusion on the merits of whether Vegors's alleged horseplay bars recovery because the court went on to hold Vegors's recovery was barred under a separate affirmative defense, which we will address below.

Employers are required to compensate employees for "personal injuries sustained by an employee arising out of and in the course of the employment." Iowa Code § 85.3(1). The injured employee has the burden of proving by a preponderance of the evidence that the injuries arose out of and in the course of employment. *See Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 150 (Iowa 1996). The phrase "arising out of" refers to the cause and origin of the injury. *See Miedema v. Dial Corp.*, 551 N.W.2d 309, 311 (Iowa 1996). The phrase "in the course of" refers to the time, place, and circumstances of the injury. *Id.*

Prior cases of this court suggest the injured employee must show he or she was not engaged in horseplay as part of the burden to demonstrate the injury arose out of and in the course of employment. *See Ford v. Barcus*, 261 Iowa 616, 623, 155 N.W.2d 507, 511 (1968) ("Horseplay which an employee voluntarily instigates and aggressively participates in does not arise out of and in the course of his employment and therefore is not compensable."); *Wittmer v. Dexter Mfg. Co.*, 204 Iowa 180, 185, 214 N.W. 700, 702 (1927) ("We conclude there was evidence supporting the finding of the commissioner that the appellee voluntarily participated in the play—the jostling—that caused his fall and injury, and that the injury did not arise out of his employment.").

These opinions are consistent with treatment of the horseplay issue in other jurisdictions. Some jurisdictions bar compensation for certain types of horseplay based on the "arising out of employment" language. *See Lincoln v. Whirlpool Corp.*, 279 N.E.2d 596, 601 (Ind. Ct. App. 1972) ("[W]here the 'horseplay' was not acquiesced in by the employer, not a natural condition of the employment, and where, in fact; the employee participated in the 'horseplay,' and was not, therefore, an innocent victim . . . we have consistently denied compensation in such

cases for the reason that such activity does not arise out of the employment."); 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 23.07, at 23–13 (2009) [hereinafter *Larson's*]. *Larson's* suggests the proper analysis is to look at horseplay as potentially outside the "course" of employment because of a deviation. 2 *Larson's* § 23.07, at 23–13. We agree the proper analysis is whether the claimant substantially deviated from the course of employment, as will be explored more fully below. Regardless, it is clear that the prohibition on recovery where an injury resulted from the claimant's horseplay stems from the requirement that injuries arise out of and in the course of employment.

Vegors argues that placing the burden upon the claimant to demonstrate that the injury was not the result of horseplay is inconsistent with general legal principles because it requires the claimant to prove a negative. Vegors points to Iowa Rule of Appellate Procedure 6.904(3)(*e*) which states, "[o]rdinarily, the burden of proof on an issue is upon the party who would suffer the loss if the issue were not established." Vegors contends that if horseplay is not established, the employer will suffer the loss and therefore should bear the burden.

We disagree. The horseplay exception stems from the requirement that the injury arise out of and in the course of employment, and Vegors will bear the loss here if he cannot meet this requirement. Employers may raise any number of arguments to contest an employee's assertion that an injury arose out of and in the course of employment. For example, in *Quaker Oats*, the employee was injured in a traffic accident after being paged to the plant on a Sunday to fix a mechanical problem. *Quaker Oats*, 552 N.W.2d at 147. The employer argued that the employee's travel home from the plant was not in the course of

employment and that the employee deviated from his employment by taking the more scenic route home. *Id.* at 150, 153. The employer's arguments were meant to contest whether the injury arose out of and in the course of employment. The burden, however, remained on the employee and did not shift to the employer. *Id.* at 150.

Similarly, Vegors retains the burden to show his injury arose out of and in the course of employment. His employer, Xenia, argues that he has not met that burden because the injury was the result of horseplay. This argument does not shift the burden to Xenia.

**B. Application of Horseplay Doctrine to Vegors.** Vegors argues that even if the commissioner improperly held Xenia, the employer, had the burden to establish horseplay, the district court should have remanded for the commissioner to apply the facts to the proper burden.

The deputy commissioner held that Xenia did not meet its burden to demonstrate horseplay and credited Vegors's explanation of the injury. On review within the agency, the commissioner noted that the deputy commissioner "believed claimant when he testified that his act of shaking his butt was intended as a means of communication and not to initiate, instigate or participate with a co-workers' horseplay that lead [sic] to the injury." The commissioner affirmed the award of benefits, explaining that although his review is de novo, he gave deference to the deputy commissioner's credibility determination and that "[g]enerally, non-participating victims of horseplay will be compensated." The district court held the agency applied the incorrect burden, but did not remand the case to the commissioner because the court separately determined Xenia had established its willful-injury defense under section 85.16(3).

Vegors argues it cannot be determined as a matter of law that Vegors engaged in horseplay that would bar compensation and therefore,

remand is appropriate to allow the commissioner to consider the issue under the proper burden. *See McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 186 (Iowa 1980) ("Remand is also necessitated in order to permit the agency to re-evaluate the evidence, applying the correct rule of law, unless the reviewing court can make the necessary factual findings *as a matter of law* because the relevant evidence is both uncontradicted and reasonable minds could not draw different inferences from it." (Emphasis added.)). We agree with Vegors that it cannot be determined *as a matter of law* that Vegors participated in horseplay that barred recovery.

This court has held that horseplay which an employee "voluntarily instigates and aggressively participates in does not arise out of and in the course of his employment." *Ford*, 261 Iowa at 623, 155 N.W.2d at 511. Not all acts of horseplay or levity will preclude an injured employee from recovery. Instead, a claimant's actions—including horseplay—will bar recovery under the workers' compensation scheme when the claimant substantially deviates from the employment. *See Quaker Oats*, 552 N.W.2d at 153–54 (noting "injury is not compensable if [claimant] is found to have 'deviated sufficiently from the line of duty so that his or her actions are foreign to the employer's work'" and affirming agency determination of no "substantial deviation from or abandonment of the employment" (quoting *Sheerin v. Holin Co.*, 380 N.W.2d 415, 417 (Iowa 1986)); *Eagle-Picher Co. v. McGuire*, 307 P.2d 145, 147 (Okla. 1957) ("'This doctrine, that a deviation in a certain limited measure does not take the employee out of the course of employment, is applicable not only to curiosity cases, horseplay and assaults, but also to foolhardy acts.'" (quoting *Secor v. Penn Serv. Garage*, 113 A.2d 177, 181 (N.J. Super. Ct. App. Div. 1955))).

Innocent employees who are injured as the result of another's horseplay may recover. It is "clearly established that the non-participating victim of horseplay may recover compensation." 2 *Larson's* § 23.02, at 23–2; *see also Coleman v. Armour Swift-Eckrich*, 130 P.3d 111, 114–16 (Kan. 2006) (adopting rule that non-participating victim of horseplay may recover based on "overwhelming weight of . . . authority in our sister states and current legal commentary").

For those employees who have initiated or are participating in horseplay, courts and commentators have suggested four considerations for determining whether the horseplay is a deviation from the course of employment that bars recovery:

> "(1) the extent and seriousness of the deviation, (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay."

*Phillips v. John Morrell & Co.*, 484 N.W.2d 527, 530–31 (S.D. 1992) (quoting 1A *Larson's Wormen's Compensation Law* § 23.00 (1990) (now 2 *Larson's* § 23.01, at 23–2)) (holding slaughterhouse assembly line worker who threw hog sperm cords at a coworker could recover for a serious stabbing injury sustained from the coworker). Courts have also held that the causal connection between a claimant's own conduct and an injury may be severed where there is a passage of time and the employee has returned to the course of employment. *See Baird v. Travelers Ins. Co.*, 107 S.E.2d 579, 583 (Ga. Ct. App. 1959) (upholding determination that claimant was entitled to compensation after being injured by supervisor's horseplay where claimant's own horseplay had taken place an hour earlier in a separate location); *Rex-Pyramid Oil Co. v. Magan,* 153 S.W.2d

895, 899 (Ky. Ct. App. 1941) (upholding award of benefits to claimant who engaged in a waterfight on employer's property and was afterwards hit by a car while crossing a highway to perform work at another site).

The inquiry should focus on the actions of the claimant.

> The substantial character of a horseplay deviation should not be judged by the seriousness of its consequences in the light of hindsight, but by the extent of the work-departure in itself. This is not always easy to do, especially when a trifling incident escalates or explodes into a major tragedy.

2 *Larson's* § 23.07[3], at 23–23. The character of Vegors's action of shaking his rear end—and not the serious injury resulting from being hit with a truck—must be analyzed to determine whether it is a deviation sufficient to bar recovery.

It cannot be determined as a matter of law that Vegors voluntarily instigated or aggressively participated in horseplay to an extent that prevents compensation. There is evidence in the record that the horseplay was initiated only by Byrd or that any action by Vegors was an insubstantial deviation from his employment. Vegors testified that he acknowledged Byrd with his hind end and that he did not intend to dare Byrd to hit him with a truck, otherwise he would not have turned around and focused his attention on his work prior to being hit. The commissioner made a determination that Vegors meant to shake his posterior as a method of acknowledging his coworker. Vegors's butt wiggle considered in isolation could be thought a "harmless act of levity." *Baltimore & Ohio R.R. v. Taylor*, 589 N.E.2d 267, 274 (Ind. Ct. App. 1992) (affirming trial court determination that "[t]he fact that he was relieving the tedium of his job by a harmless act of levity does not take him outside the scope of his employment"). Additionally, it is claimed the action of Vegors's coworker Byrd was grossly disproportionate to Vegors's

own action and the proper focus is on Vegors's action. *See Liberty Nw. Ins. Corp. v. Johnson*, 919 P.2d 529, 530, 533 (Or. Ct. App. 1996) (holding claimant who made a joking comment to a coworker and was injured when coworker twisted him to the ground in a spirit of fun was entitled to compensation); *Mustard v. Indus. Comm'n*, 792 P.2d 783, 784–85 (Ariz. Ct. App. 1990) (holding compensation was not barred because the claimant did not substantially deviate from her employment when the claimant joked that a coworker had dropped his teeth, ran when he good-naturedly chased her, and was hit in the back with a hammer when the two collided).

Because we reverse the agency determination regarding the proper allocation of the burden of proof, we remand to the agency to allow the agency to apply the proper burden to the evidence. *Cf. Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387, 393 (Iowa 2009) ("Although it could be argued there is substantial evidence in the record that Kohlhaas's current condition does not warrant an increase in compensation, it is fair to conclude the commissioner's determination may have been influenced by the language in *Acuity* we have just disavowed. In that we have clarified the requirements for a review-reopening petition, we reverse and remand . . . ."). The commissioner should evaluate whether Vegors's action was a substantial deviation from his work based on the four factors identified above and applying the proper burden.

**C. Interpretation of Iowa Code Section 85.16(3).** Xenia argues Vegors's compensation is also barred by Iowa Code section 85.16(3). Section 85.16(3) prohibits compensation where an employee's injury was caused "[b]y the willful act of a third party directed against the employee for reasons personal to such employee." Iowa Code section 85.16(3) is an affirmative defense, and, therefore, the employer bears the burden to

demonstrate compensation is barred. *Cedar Rapids Cmty. Sch. v. Cady*, 278 N.W.2d 298, 299 (Iowa 1979). The commissioner held that section 85.16(3) does not apply to coworkers because they cannot be considered a "third party." The district court disagreed and held that Iowa Code section 85.16(3) applies to willful acts by a coworker. The district court also held that the term "willful" requires only that the third party intend to do the act which causes injury, not intend to injure the employee. The district court held that Xenia established the affirmative defense of Iowa Code section 85.16(3) because Byrd committed a willful act injuring Vegors for a reason personal to Vegors, and Vegors therefore could not recover. We must determine whether section 85.16(3) has application to this case.

We apply the workers' compensation statute broadly and liberally in keeping with its humanitarian objective: the benefit of the worker and the worker's dependents. *Id.* The statute's "beneficent purpose is not to be defeated by reading something into it which is not there, or by a narrow and strained construction." *Id.* We are, however, bound by the requirements of the statute. *Id.*

A limited number of states have enacted statutes comparable to section 85.16(3). Regardless of whether states have enacted such statutes, "it is almost universally held that when the animosity or dispute which culminates in the assault is imported into the place of employment from the injured employee's private or domestic life, the injury is not compensable, at least where the animosity is not exacerbated by the employment." *Commercial Standard Ins. Co. v. Marin*, 488 S.W.2d 861, 864 (Tex. Civ. App. 1972).

The potential application of section 85.16(3) in this case gives rise to three issues: (1) whether the statute's reference to third parties

includes coworkers, (2) whether the term "willful" requires an intent to injure or only an intent to do the act which causes injury, and (3) whether horseplay can be considered "reasons personal" to the injured employee.

With regard to the first issue, Vegors suggests the phrase "third party" cannot include coworkers because elsewhere in the workers' compensation statute these terms are referred to separately. In section 85.22, the statute explains that when an injury creates a legal liability against "some person, other than the employee's employer or any employee of such employer," the injured employee "may also maintain an action against such third party for damages." Vegors points to this use of the phrase "third party" as evidence that the term third party was not meant to include coworkers. We do not find this example instructive. The phrase "third party" in section 85.22 is preceded by "such," which refers the reader to the earlier definition of "person", which specifically excluded coworkers. Additionally, the language of section 85.16(3) requires that the action of the third party be taken for "reasons personal to the employee," suggesting that the purpose of the section was to prohibit compensation where the injury stems from a personal dispute or animosity stemming from the injured employee's life outside of work that is not caused or exacerbated by the employment. This is equally applicable to coworkers who may have some personal dispute outside of work which culminates in an incident while at work. We see no reason in the language of the statute to limit its application to third parties who are not coworkers.

The second issue concerns the proper definition of "willful." The district court held the term willful required only that the third party intend to do the act, not that the third party intend to injure the

claimant. This court has recognized that willful is susceptible to two definitions. One possible definition of willful is " 'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.' " *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, 763 N.W.2d 250, 263 (Iowa 2009) (quoting *United States v. Murdock*, 290 U.S. 389, 394, 54 S. Ct. 223, 225, 78 L. Ed. 381, 385 (1933), *overruled in part on other grounds by Murphy v. Waterfront Comm'n*, 378 U.S. 52, 73, 84 S. Ct. 1594, 1606, 12 L. Ed. 2d 678, 692 (1964)). A second potential meaning is " 'an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely.' " *Id.* (quoting *Murdock*, 290 U.S. at 395, 54 S. Ct. at 226, 78 L. Ed. at 385). The interpretation of the word "willful" is influenced by the statutory context. *Id.*

Many state statutes comparable to section 85.16(3) require that the third party act be done with an intent to injure. *See, e.g.*, Tex. Lab. Code Ann. §406.032(1)(C) (West, Westlaw through 2009 Regular and First Called Sessions of the 81st Legislature) (injury is not compensable if it "arose out of an act of a third person intended to injure the employee because of a personal reason and not directed at the employee as an employee or because of the employment"); 77 Pa. Cons. Stat. § 411(1) (Westlaw through Act 2010–37) (injury "shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment"). Iowa's statute appears to be of the same type as these other state statutes but refers only to a "willful act." However, we need not address the proper standard for a "willful act" because, as explained below, we hold that section 85.16(3) is inapplicable to the circumstances of this case.

With regard to the third issue, we find that Byrd's action of hitting Vegors with a truck was not done for "reasons personal to the employee." Courts have explained that incidents which arise between employees are often "part and parcel" of the working environment and will not bar compensation unless an employee's action is caused by "influences originating entirely outside the working relation and no[t] substantially magnified by it." *Hartford Accident & Indem. Co. v. Cardillo*, 112 F.2d 11, 17 (D.C. Cir. 1940); *cf. Tex. Employers Ins. Ass'n v. Campos*, 666 S.W.2d 286, 289 (Tex. App. 1984) ("Where an employee is injured in a personal difficulty arising over the manner in which his work is being done, although the difficulty itself is not a part of the work of the employee, such injury is compensable . . . ."). Byrd's action of trying to bump Vegors with his work truck was not based on a personal relationship outside the working environment.

The category of injuries barred from compensation by section 85.16(3) is often referred to as "privately motivated assaults" or "imported-quarrel cases." 1 *Larson's* § 8.02, at 8–43. As *Larson's* explains, "[a] familiar example of private animosity is that engendered by or about spouses." *Id.* While we do not rule out the possibility of a situation where horseplay was based on motivations imported to the working environment, typically it is the working environment itself which leads coworkers to engage in momentary jokes or asides. As Justice Cardozo explained,

> Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. We think with Kalisch, J., in *Hulley v. Moosbrugger*, . . . "[f]or workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor."

*Leonbruno v. Champlain Silk Mills*, 128 N.E. 711, 711 (N.Y. 1920) (quoting *Hulley v. Moosbrugger*, 93 A. 79, 79 (N.J. Sup. Ct. 1915), *rev'd*, 95 A. 1007, 1010 (N.J. 1915)); *see also* 2 *Larson's* § 23.02, at 23–3 ("Mr. Justice Cardozo's opinion in the *Leonbruno* case is generally credited with having ushered in the modern rule.").

Section 85.16(3) is limited to actions which are taken "for reasons personal" to the employee and not as a consequence of the working environment. There is no evidence in the record that Byrd and Vegors had any relationship outside of work other than as coworkers or that Byrd hit Vegors for any reason imported from outside the working environment. Therefore, as a matter of law, the affirmative defense in section 85.16(3) does not bar Vegors's claim for benefits.

## IV. Conclusion.

Claimant has the burden to establish his injuries arose out of and in the course of employment. A claimant cannot recover for injuries stemming from an employee's instigation or aggressive participation in horseplay that constitutes a substantial deviation from his employment because such actions do not arise out of and in the course of the employment. Therefore, the claimant bears the burden to establish he or she did not substantially deviate from the employment by instigating or aggressively participating in the horseplay. Because the commissioner incorrectly applied the burden of proof, we remand to the district court for remand to the commissioner for reconsideration under the current record.[1] Additionally, Vegors's claim is not barred by section 85.16(3)

---

[1]We note that Xenia raised two additional issues on judicial review that were not addressed by the district court: (1) whether the deputy commissioner erred in finding that the respondent was entitled to a permanent total disability award and (2) whether the deputy commissioner erred in finding that the claimant's left knee injury was causally related to the June 2, 2005 incident. Because we remand to the district court for remand to the commissioner on the issue of entitlement to compensation, these

because the action of his coworker that resulted in his injury was not done for reasons "personal" to Vegors.

**DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**

---

issues need not be addressed by the district court until Vegors's entitlement to benefits is determined.